**UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

IRA J. GIBSON                                                                                          PLAINTIFF

VS.                                       NO. 5:10-CV-00109 SWW

MILLCREEK OF ARKANSAS                                                         DEFENDANT

## ORDER

Plaintiff Ira J. Gibson ("Gibson") brings this employment discrimination case against her former employer, Millcreek of Arkansas ("Millcreek"). Before the Court is Millcreek's motion for summary judgment (docket entries #8, #9, #10), Gibson's response in opposition (docket entries #13, #14, #15, #16), and Millcreek's reply (docket entry #17). After careful consideration, and for reasons that follow, summary judgment will be entered in Millcreek's favor, and this action will be dismissed with prejudice.

### I.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

## II.

The following facts are undisputed. Defendant Millcreek is a residential center located in Fordyce, Arkansas that provides treatment and on-site educational services to children and adolescents with emotional and behavioral problems. In order for Millcreek to receive government funding for its education programs, it must contract with a local school district and satisfy certain state regulations. Generally, state regulations require that Millcreek's educators be licensed teachers, certified in special education. And, because Millcreek's residents include children ranging from preschoolers to highschool students, a Millcreek teacher must be certified in special education for the specific grade level he or she teaches, either preschool to fourth grade ("P-4"), or fourth grade through twelfth grade ("4-12").

State regulations allow teachers who are not certified in special education to work temporarily as special education teachers under a process known as an Additional Licensure Plan ("ALP"). Under an ALP, a licensed teacher may be employed as a special education teacher for a three-year period, provided that within that three-year period, he or she completes prescribed course work and passes an exam. ALP's differ depending on the grade level a teacher is hired to

teach. Teachers who teach grades P-4 must complete a P-4 special education ALP, and teachers who teach grades 4-12 must complete a 4-12 special education ALP.

On August 20, 2004, Millcreek hired Gibson, an African-American, who at the time was a licensed teacher but was not certified in special education. During her tenure at Millcreek, Gibson taught grade levels 4-12 only and worked pursuant to a 4-12 ALP. In 2006, the ADE began stressing the responsibility of schools to oversee teachers' progress toward satisfying ALP requirements. Accordingly, Millcreek's director of education, Vickie Wilkerson, began asking Gibson for proof that she was enrolled in college and completing required coursework under her ALP. In May 2006, Gibson provided Wilkerson a copy of a course review dated May 31, 2006 that she obtained from Southern Arkansas University ("SAU"). The review stated that Gibson could complete her ALP course work in two regular semesters and one summer semester. However, Gibson did not apply for admission to SAU until after the fall 2006 semester began. Additionally, Gibson was admitted to SAU in November 2006, but she never enrolled in or registered for classes at SAU. In fact, Gibson did not take a single course toward fulfilling her certification during her tenure at Millcreek, and although she took the examination required under her ALP, she earned a failing score.

In May 2007, Wilkerson informed Millcreek's human resource director, Terri Riggs, that Gibson had not satisfied the requirements of her 4-12 ALP. On May 20, 2007, Millcreek informed Gibson that her teaching contract would not be renewed because she had no years of eligibility remaining on her 4-12 ALP. Gibson maintained that she should have more time to complete her 4-12 ALP, and Wilkerson sought advice from the ADE. Additionally, Wilkerson informed the ADE that Gibson had never been employed at Millcreek pursuant to a P-4 ALP and

3

was, therefore, eligible to teach at the P-4 level.

By letter dated July 17, 2007, Wilkerson informed Gibson that the ADE determined that she had no years of eligibility to teach under her unfulfilled, 4-12 ALP and that, although Gibson had three years of eligibility to teach under a P-4 ALP, Millcreek had no P-4 positions available.

Gibson filed a discrimination charge against Millcreek with the Equal Employment Opportunity Commission, alleging race discrimination. After receiving a right-to-sue letter, Gibson filed this action pursuant to 42 U.S.C. §§ 1981 and 1983 and Title VII of the Civil Rights Act of 1964,[1] charging that Millcreek denied her due process and equal protection of the law and discriminated against her on the basis of race.

### III.

Claims under 42 U.S.C. § 1983

A plaintiff suing under 42 U.S.C. § 1983 must establish that the defendant, acting under color of state law, deprived her of a right, privilege, or immunity secured by the United States Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Hamilton v. Schriro*, 74 F.3d 1545, 1549 (8th Cir. 1996). Millcreek asserts that Gibson is unable to show that it acted under color of state or that she suffered a constitutional deprivation.

An individual acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Roe v. Humke*, 128 F.3d 1213, 1216 (8th Cir. 1997). Here, neither Millcreek's acceptance of state funds nor the fact that it must follow ADE regulations make its hiring

---

[1] Although Gibson does not reference Title VII in her complaint, she indicates in her response in opposition to summary judgment that she pursues a claim that Millcreek failed to place her in a vacant teaching position based on her race in violation of Title VII.

decisions acts of the state, *see Rendell-Baker v. Kohn*, 457 U.S. 830, 840-841, 102 S.Ct. 2764 (1982), and nothing in the record indicates a close nexus between the State and the decision not to hire Gibson for the 2007-2008 school year. In fact, according to the undisputed evidence, if Millcreek had an opening at the P-4 level for the 2007-2008 school year, no state regulation would have prevented it from hiring Gibson to fill such a position. The Court finds that Gibson has failed to come forward with evidence showing that Millcreek acted under color of state law. Accordingly, Millcreek is entitled to summary judgment with respect to Gibson's § 1983 claim.

<u>Claims under 42 U.S.C. § 1981 and Title VII</u>

Gibson claims that Millcreek discriminated against her on the basis of race by failing to hire her for a P-4 teaching position for the 2007-2008 school year and hiring a white applicant instead. Additionally, Gibson claims that Wilkerson sought an extension of time for five white teachers to complete their ALP's but failed to do the same for her.

To establish discrimination based on disparate treatment, Gibson shoulders the burden to show, with circumstantial or direct evidence, that the complained-of conduct was motivated by race discrimination. Because Gibson presents no evidence that directly points to the presence of a discriminatory motive, the Court will analyze her discrimination claims under the three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972).[2] Under the *McDonnell Douglas* framework, Gibson must establish a *prima facie* case of discrimination by showing that (1) she is a member of a protected class; (2) she met the legitimate expectations of

---

[2] The *McDonnell Douglas* burden-shifting analysis is applicable to claims brought under Title VII, 42 U.S.C. § 1983, and 42 U.S.C. § 1981. *See Lockridge v. Board of Trustees of University of Arkansas,* 315 F.3d 1005, 1013 (8th Cir. 2003).

her employer; (3) she suffered adverse employment action; and (4) similarly situated employees that were not members of her protected class were treated differently. *See Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005).

If Gibson makes a *prima facie* showing, the burden shifts to Millcreek to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Then, the burden shifts back to Gibson to present evidence that the stated reason for adverse action is pretext for discrimination. *Id*. Specifically, Gibson must (1) discredit Millcreek's asserted reasons and (2) show that the circumstances permit a reasonable inference that race was the real reason for the adverse employment action. *See Johnson v. AT & T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005).

*Failure to Hire*. It is undisputed that because Gibson failed to complete her 4-12 ALP, Millcreek was unable to renew her contract for a 4-12 teaching assignment for the 2007-2008 school year. However, Gibson claims that Millcreek could have placed her in a vacant, P-4 teaching position but hired a white teacher named Mycynthia Cochran ("Cochran") instead.

Millcreek asserts that no genuine issues exist for trial on Gibson's failure-to-hire claim because (1) it had no openings for a P-4 teacher for the 2007-2008 school year and (2) it hired Cochran to teach at the 4-12 level pursuant to a 4-12 special education ALP. According to the affidavit of Pat Neal, Millcreek's current director of education, Millcreek hired Cochran as a 4-12 special education teacher in August 2007, and Cochran has never worked for Millcreek in a P-4 position. *See* docket entry #17, Ex. A (Neal Aff.). Gibson presents no evidence that contradicts Neal's testimony.

Gibson has failed to come forward with evidence showing that Millcreek failed to assign her to an open teaching position for which she was qualified and hired a white applicant instead.

Furthermore, Millcreek has presented evidence that it had no P-4 openings for the 2007-2008 school year, *see* docket entry #10, Exs. AA, BB, OO, and Y, and Gibson presents no evidence showing otherwise. The Court finds no issues for trial on this claim.

*Disparate Treatment*. Gibson claims that Wilkerson sought and obtained ADE extensions that granted Wilkerson and four other white teachers more than three years in which to complete their ALP plans. Millcreek presents evidence that two of the five teachers referenced by Gibson were in fact black. Additionally, Millcreek presents evidence showing that the three white teachers who received ADE extensions were not similarly situated to Gibson. Specifically, the evidence shows that the teachers completed their ALP coursework at the University of Monticello ("UAM") within three years as required under ADE regulations, but later learned that the ADE did not recognize UAM as a having an accredited special education program. *See* docket entry #10, Ex. Y. The record shows that the extensions were granted under extenuating circumstances that did not exist in Gibson's case. Because Gibson presents no evidence that she was treated less favorably than similarly-situated teachers, her disparate treatment claim must fail.

## IV.

Finding no issues for trial in this case, the Court finds that Defendant's motion for summary judgment (docket entry #8) should be and it is hereby GRANTED. Pursuant to the judgment entered together with this order, this case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 25TH DAY OF JANUARY, 2011.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE